No. 34,236

THE FEDERAL LAND BANK OF WICHITA, *Appellant*, v. ROY M. SHANE and ALTA R. SHANE et al., *Appellees*.

(92 P. 2d 103)

Opinion filed July 8, 1939.

*S. S. Alexander, T. M. Flick,* both of Kingman, *W. E. Pepperell, Conrad L. Ball, J. P. Flinn* and *Edward H. Jamison,* all of Wichita, for the appellant.

*Martin S. Hall,* of Harper, and *Paul R. Wunsch,* of Kingman, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on a promissory note and to foreclose a mortgage given as its security. Judgment was entered in favor of plaintiff in conformity with the literal terms of the instruments executed by the makers.

That the judgment should have been quite different in various respects is the subject matter of this appeal, to an understanding of which the pertinent and incidental facts must be related at some length:

In 1908 one George T. Holland, of Harper county, died testate,

seized of a half-section farm in Kingman county. He was survived by his widow, two sons, and four grandsons who were the children of a deceased daughter. By his will he gave a life estate in his real property to his widow, who died long ago. His remainder estate was devised thus:

> One-third to George C. Holland (son).
> One-third to Joseph T. Holland (son).
> One-twelfth each to Roy M. Shane, Maurice E. Shane, Percy N. Shane and Roland B. Shane (grandsons).

In 1919 George C. Holland and wife sold and conveyed their interest by warranty deed to Roy M. Shane for the sum of $6,666, which acquisition, added to his inherited share, made him the owner of a five-twelfths interest in the farm. To obtain the money to buy his uncle's share he borrowed $5,500 from one Zacharias and borrowed $1,000 from his brother, Percy N. Shane, and made up the balance out of his own resources. To secure the repayment of the Zacharias loan he and his uncle, Joseph T. Holland, and wife, and his brothers, Maurice E. Shane and Percy N. Shane, executed their promissory note to Zacharias for $5,500 and likewise executed a mortgage on the half section of land about which we are presently concerned. The youngest of the Shane brothers was then a minor and had no part in the transaction.

About the same time, Roy M. Shane made an oral agreement with his brothers and with his uncle Joseph to occupy the land as their tenant upon condition that he would attend to the upkeep of the improvements, pay the taxes for the use of its pasture land, and deliver to each of them their proportionate rental shares of one-third of the crops grown on the tilled land.

On or about May 12, 1921, an application (a three page document numbered 28,597) was presented to the Federal Land Bank of Wichita for a loan of $10,000. It recited that it was being made by Roy M. Shane through the Chikaskia Valley National Farm Loan Association, of Adams, Kingman county, Kansas. Included in the application was a questionnaire to elicit pertinent facts concerning Roy M. Shane—that he was 30 years old, married and had an infant daughter, by occupation a farmer and stockraiser, resided on the half-section farm in controversy, farmed it himself, listing his personal assets, horses, colts, cows and stock cattle, hogs and poultry, his current acreage of wheat, oats, kaffir and feed crops, and stating that *his* (Roy M. Shane's) total indebtedness was $5,500 on mort-

gaged real estate and other indebtedness of $1,000; and that he was carrying a $5,000 life insurance policy.. Included also in the application was an inquiry as to the purposes of the loan applied for, which was answered thus:

"To pay off present mortgage and by [buy] out as many of my brothers as possible."

"What date is money desired? [Answer] October 1, 1921."

The application contained the following:

"If the title to this land is held jointly, authority is hereby given Roy M. Shane to become a member of this association [Chicaskia Valley National Farm Loan Association], and to act for and on behalf of the other joint owner or joint owners. . . . If the title is held by two or more joint owners, all joint owners must sign application."

The appended signatures were these:

"Dated May 12, 1921        Roy M. Shane
"Witness, A. M. Shoemaker    J. [Joseph] T. Holland, Percy N. Shane
                        Maurice E. Shane."

At the date of this application there was in Kingman county the usual local federal farm loan association which is a part of the routine machinery set up by the federal government for the effective administration of the federal farm loan act. One B. C. Morrison was its secretary-treasurer, and correspondence with the Federal Farm Loan Bank in respect to the loan applied for was conducted by Morrison in his official capacity. On September 1, 1921, Morrison was succeeded by O. J. Fisk as secretary-treasurer, and the correspondence relating to the pending loan transaction was thereafter conducted by him.

Some time after the Federal Farm Loan Bank received the application described above, it appears that the bank signified its willingness to make a loan for $8,000. On June 30, 1921, Morrison, secretary-treasurer of the local loan association, wrote to the bank:

"In regard to Roy M. Shane's loan through the Chikaskia Valley Assn. here, he accepts the reduction of his loan from $10,000 to $8,000.

                      B. C. Morrison, *Secy. Treas.*"

Later, on August 25, 1921, Morrison in his official capacity again wrote to the bank thus:

"In answer to your letter attached in regard to Roy M. Shane's loan, will say that Mary T. Holland is deceased, and the heirs are all willing to sign deed to land favor of Roy M. Shane, but the youngest heir will not be of age till October 19th, this year, and Mr. Shane would like to fix up the deal some

way, so he would not have to pay another six months interest, as the interest is due October 1st.

"J. T. Holland is guardian of the youngest heir, Percy N. Shane [Roland B. Shane]."

This uncompleted transaction was held in abeyance until Roland B. Shane attained his majority on October 19, 1921, after which O. J. Fisk, successor to B. C. Morrison, as secretary-treasurer of the local loan association, wrote to the bank thus:

"OCTOBER 22, 1921.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"*In re:* Appl. No. 28597-501—Roy M. Shane.

"The last heir in this case is of age and we are now ready to close this loan. If you will send the proper mortgage, note and necessary papers we will complete the same.

"We have advanced fifty-five hundred dollars in this case to pay off the mortgage and we need the money. Anything you may do to help us through with the loan will be greatly appreciated."

Without further ado, and without execution of conveyances to Roy Shane by his fellow tenants in common, or execution to the plaintiff bank of any obligation by them or any of them, on November 8, 1921, Roy M. Shane and wife executed their promissory note to the bank payable in 33 years, and to secure its payment they, at the same time, executed to it a mortgage on the half section of land in controversy.

The amount of the loan thus procured was disbursed as follows:

The plaintiff bank, on instructions from Roy M. Shane, paid $5,500 to the Sunflower State Bank of Wichita, correspondent of the Farmers State Bank of Adams, Kingman county, which had temporarily advanced that sum to pay off the $5,500 mortgage held by Zacharias. Other disbursements of the proceeds of the loan were—

Investment in federal land bank stock.................  $400.00
Expense of abstract and recording....................     7.70
Balance paid by check of federal land bank to O. J. Fish,
    secretary-treasurer, and Roy M. Shane jointly, No-
    vember 15, 1921.................................. $2,092.30

Out of this last remittance Roy M. Shane repaid to his brother Percy N. Shane the $1,000 he had borrowed from him when he purchased the interest of his uncle, George C. Holland, in 1919. The remainder of the proceeds of the loan were used by Roy M. Shane in his personal and business affairs.

Thereafter for a number of years Roy M. Shane paid the interest and requisite installments on this mortgage indebtedness, paid

the taxes on the property, and paid crop rent to his fellow tenants-in-common until 1929, following which he seems to have met with reverses of various sorts and paid no rent thereafter.

In 1930 Joseph T. Holland died testate. By his will he devised a life estate in all his property to his widow, Helen M. Holland, with full power to alienate it during her lifetime, with remainder to their children. Shortly after her husband's death she asked Roy B. Shane for an accounting of rents on her husband's interest in the farm occupied by Roy, and on which plaintiff held the mortgage of present concern. Some years later Roy M. Shane got into some financial difficulty from which it was imperative that money be speedily raised to extricate him; and Mrs. Helen M. Holland, who was his aunt by marriage, took a hand to bring that about. A local banker, L. D. Banta, became interested and she sold and conveyed to him the interests of herself and of her children for $1,500; and she also negotiated and effected a sale to him of the interests of Maurice E. Shane, Percy N. Shane and Roland B. Shane at proportionately the same price—$375 each.

About the same time Roy M. Shane and wife sold and conveyed their interest in the mortgaged farm to one P. R. Banta, brother of L. D. Banta. All these purported conveyances of interests in the mortgaged farm occurred late in 1937 or early in 1938, and were evidenced by quit-claim deeds from the grantors to the Banta brothers.

These transactions speedily came to the attention of the plaintiff bank, and as the taxes on the mortgaged farm had also fallen into arrears it promptly instituted foreclosure proceedings, impleading everybody incidentally concerned. Later, on May 24, 1938, it filed a second amended petition alleging in detail the facts summarized above, and alleged that in closing the loan applied for by the signatories to application No. 28,597, dated May 12, 1921, the fact that Roy M. Shane did not have full record title was overlooked and forgotten by "those in charge of closing said loan on behalf of plaintiff," and that—

"All such parties knew that the plaintiff had overlooked the fact that proper deeds had not been placed of record and that all such parties knew that the loan would not have been closed without having full interest in the property as security. That all such parties knowingly, fraudulently and intentionally refrained from calling such error to the plaintiff's attention."

Plaintiff also alleged that of the proceeds of the loan—

"Plaintiff believes and alleges the fact to be that said $2,092.30 was used for

the purpose of securing deeds from the other parties making application for such loan, including Roland B. Shane."

In its petition the bank also alleged 'that L. D. Banta and P. R. Banta claimed certain interests in the property covered by its mortgage, specifying the deed from Helen M. Holland to L. D. Banta and his quit-claim deeds from Percy N. Shane, Maurice E. Shane and Roland B. Shane, also the quit-claim deed from Roy M. Shane to P. R. Banta; but plaintiff alleged that at the time L. D. Banta procured those deeds he knew—

"That the plaintiff's mortgage covered the full interest in such real estate and that the recording of the plaintiff's mortgage constituted actual and constructive notice."

The plaintiff bank also alleged that L. D. Banta paid no consideration for the deeds he had received from Mrs. Helen M. Holland and from the three Shane brothers.

In a *second* cause of action, plaintiff alleged the defendants who had been Roy M. Shane's cotenants in common in 1921 were estopped from asserting any right in the property superior to plaintiff's mortgage. In a *third* cause of action plaintiff claimed to be entitled to an *equitable* mortgage on the full interest in the property. In a *fourth* cause of action it alleged that—

"If the plaintiff is not entitled to foreclose its mortgage or an equitable mortgage, then the plaintiff should be subrogated to the rights of Frank R. Zacharias under the note and mortgage given to him."

In a *fifth* cause of action plaintiff alleged that failing all relief prayed for in its earlier causes of action—

"Then the court should find that the $5,500 note and mortgage given to Frank R. Zacharias was paid off by the plaintiff for the benefit of all tenants in common of Roy M. Shane; and that all tenants in common of Roy M. Shane should equally contribute to Roy M. Shane for the benefit received by them and that the plaintiff is entitled to be subrogated to the rights of Roy M. Shane for contribution as against all of his cotenants."

This second amended petition concluded with a prayer for various sorts of relief, including an adjudication that Roy M. Shane was the absolute owner of the property subject to its mortgage, that it be given a personal judgment against Roy M. Shane and wife for the full amount of their note and interest, and for a decree foreclosing the mortgage and barring all other defendants from any right therein superior to its lien. Plaintiff also prayed for alternative relief as suggested in its third, fourth or fifth causes of action.

L. D. Banta separately answered with a general denial, denied the agency of B. C. Morrison and his authority to write the letter of August 25, 1921, set out above, alleged that neither J. T. Holland and wife, nor Maurice or Percy Shane had knowledge of the payment of any money to Roy M. Shane and the secretary-treasurer of the local farm loan association on November 15, 1921, admitted that he (L. D. Banta) had acquired a seven-twelfths interest in the property, and that his brother P. R. Banta had acquired the five-twelfths interest of Roy M. Shane.

L. D. Banta further answered that he had acquired his interest in the property for a good and valuable consideration, without notice, knowledge or information of any claim of plaintiff as alleged in its second amended petition, and that—

"Since November 5, 1921, plaintiff had in its possession and had examined by its attorney, a full and complete abstract of title and had full knowledge of the ownership of such land, and could have, by the exercise of reasonable diligence, known that Joseph T. Holland, Maurice E. Shane, Percy N. Shane and Roland B. Shane owned the seven-twelfths interest in said lands and tenements. That said plaintiff in nowise notified said parties of the completion of said loan or the disbursements of the proceeds thereof and did not give any of said parties notice that it claimed a lien upon all of their interest in said land and that such parties did not know that the bank claimed any right, title or interest in or to their respective shares of said lands and that by reason thereof plaintiff has been guilty of carelessness, negligence and laches and is now estopped to assert in any manner or form any lien on such seven-twelfths interest."

In a cross petition L. D. Banta set up the extent of his alleged interest and prayed that he be adjudged to be the exclusive owner of seven-twelfths of the property and for partition thereof so that he could enjoy the same in severalty.

Helen M. Holland filed a separate answer, alleging that when the original Zacharias note and mortgage were executed in 1919, she and her husband, the late Joseph T. Holland, had signed the same as accommodation makers for the purpose of assisting Roy M. Shane to acquire the interest of George C. Holland, and that Maurice E. Shane and Percy B. Shane had signed those instruments for the same purpose, and that neither she nor her husband Joseph T. Holland, nor Maurice E. Shane nor Percy B. Shane had received any part of the consideration.

Mrs. Holland also denied the agency of B. C. Morrison and denied his authority to write the letter of August 25, 1921. She also alleged the testate death of her husband, Joseph T. Holland, in 1930, and

the devise of all his estate to her for life with power of sale and disposition, and that she had exercised that power in the execution of the deed she made to L. D. Banta, dated January 11, 1938. In other respects her answer substantially conformed to that of L. D. Banta, including a denial of the agency of B. C. Morrison and a denial of his authority to write the letter to the bank dated August 25, 1921.

Pleadings were filed by other parties to the action but those may require no attention. Plaintiff filed appropriate general and special denials to join all material issues between it and the answering defendants.

The cause was tried without a jury. Plaintiff's evidence consisted mainly of the application for the loan as narrated above, the bank's files of correspondence pertaining to the loan, particularly the letters of B. C. Morrison, secretary-treasurer of the local federal farm loan association, and of his successor in that office. Whatever questions of competency or sufficiency may have inhered in the evidence, including the evidential and probative significance of all the attendant circumstances, we do not discern any sharply controverted issue of material fact. It is neither denied nor deniable that none of the signers of the application, dated May 12, 1921, other than Roy M. Shane, ever figured in any capacity in the later steps of the loan transaction initiated on that date. While it may be inferred that those signers of the application, J. [Joseph] T. Holland and Maurice and Percy Shane were expected to sign instruments conveying their interests to Roy M. Shane, or to sign the note and mortgage which he and his wife later signed, there was not a syllable of evidence to show that they agreed to do so. That matter was left entirely at loose ends and eventually the loan was made on the note and mortgage executed by Roy M. Shane and wife. At the time the application for the loan was made, May 12, 1921, Roland B. Shane was a minor and of course no one had authority to bind him, nor was it shown that after he attained his majority he parted with his rights until he quit-claimed his interest to L. D. Banta on December 8, 1937.

To economize the formal introduction of evidence, counsel for the parties submitted an agreed statement covering part of the pertinent facts. This was adopted by the trial court, and supplemented, of course, by its own findings deduced from the evidence. Those findings of fact were mainly in favor of defendants. We can only take space to quote those which may require comment:

"[No. 1] . . . 'The Federal Land Bank paid the sum of $5,500 to the Sunflower State Bank of Wichita, Kansas, for the use and benefit of the Farmers State Bank of Adams, Kansas, who had made Roy M. Shane a temporary loan to pay off the Frank Zacharias loan, and the canceled papers, note and mortgage and release were sent in by the Adams bank after the proceeds of the Federal Land Bank Loan were paid out.'

. . . . . . . . . . . . . .

"[No. 9] . . . In the answer of the defendants, the agency of B. C. Morrison is denied under oath and his authority to act as agent for these defendants was not established by proof.

"[No. 10]. . . . That while said application for a loan at the time it was executed recited that the purpose of the loan in part was to pay off the Zacharias loan for $5,500, yet on September 28, 1921, the said applicant, Roy M. Shane, advised the said plaintiff to pay to the Sunflower State Bank of Wichita, Kansas, the sum of $5,500 out of the proceeds of said loan.

"[No. 11]. That at the time said application was pending and on or about the 28th day of September, 1921, the Farmers State Bank of Adams, Kansas, made a loan of $5,500 to the said Roy M. Shane for the purpose of paying of [off] the said Zacharias mortgage and thereupon said Farmers State Bank of Adams, Kansas, paid said Zacharias mortgage and the said Zacharias executed a satisfaction of said mortgage under date of October 5, 1921, and on September 28, 1921, the plaintiff bank was notified that the said Roy M. Shane had been loaned the sum of $5,500 with which to pay off the Zacharias mortgage.

. . . . . . . . . . . . . .

"[No. 13]. From the evidence it appears that the plaintiff bank at no time had any correspondence with Joseph T. Holland and wife, Percy N. Shane, Maurice E. Shane and Roland B. Shane, and except for the signing of the application there is no evidence that the said parties had any notice or knowledge of the making of said loan, the disbursement of the proceeds thereunder, or were in any wise connected therewith. That while said application for said loan recites that the purpose of said loan in part was to pay off present Zacharias loan for $5,500 and buy out as many of his brothers as possible at an expenditure of $9,500, yet it does not appear that Roy M. Shane made any representation to the plaintiff bank that he had bought out any of his brothers, nor does it appear that he negotiated with any of his brothers for the purchase of their interests, nor does it appear that his brothers ever represented to the plaintiff bank that they or any of them had sold or agreed to sell any of their respective interests in and to said lands to Roy M. Shane.

. . . . . . . . . . . . . .

"[No. 15]. That it was the plan and intention of the plaintiff bank that the mortgage which it was securing from Roy M. Shane should cover the full interest in and to all of the real estate involved in this action after the purchase thereof by the said Roy M. Shane from his brothers from the proceeds of said loan.

"[No. 16]. That the plaintiff bank at the time of the closing of said loan overlooked the fact that the said Roy M. Shane had failed to purchase the interests of his brothers in said real estate and overlooked the fact that at the time of the execution of said mortgage the said Roy M. Shane was not pos-

sessed of title to the full interest in such lands. and did not discover the fact that the said Roy M. Shane at the time that he executed said mortgage was not possessed of full title thereto until the year 1937 when some difficulty arose between the plaintiff bank and Roy M. Shane with reference to a dispute over mortgaged wheat."

Other findings of fact were that L. D. Banta purchased the interests of Helen M. Holland and of Roy M. Shane's brothers without notice of any claims on the part of the bank except as revealed by the public records of Kingman county, and that he paid the sums of money for those interests as summarized in our statement of the case.

Judgment was entered in favor of the plaintiff bank and against Roy M. Shane and wife for the amount of indebtedness evidenced by their note and interest. Foreclosure of the mortgage was decreed against the five-twelfths interest in the farm owned by Roy M. Shane at the time the note and mortgage were executed in 1921. Costs were also allowed to plaintiff against Roy M. Shane and wife, and against P. R. Banta who claimed under them. L. D. Banta was given judgment for his costs.

This judgment was assailed by appropriate post-trial motions, all of which were overruled. Hence this appeal, which contains a long assignment of errors, the most formidable of which will now be considered.

It is first contended that because the plaintiff bank was a governmental agency, all the defendants were bound to take notice that it was only authorized to make a loan secured by a mortgage on the full interest of all the parties having any title to the property. Be that rule as it may, it could not be held that where a federal land bank transcends its authority and makes a loan on mortgage security where the mortgagor owns less than the full interest therein or title thereto, the interests of other part owners of the property would be subjected to that mortgage. On the contrary, the security extends to that of the mortgagor, no further; and if the Federal Land Bank loans its funds on inadequate security it is in no better position under the law than any other money lender.

Appellant next invokes the rule of equity that where one party makes a mistake and there is inequitable conduct on behalf of the other party, a constructive fraud exists and equitable relief will be granted the innocent party. We shall not debate the soundness or justice of this rule. However, we are bound to say that the record does not show the slightest trace of inequitable conduct on the part

of the defendants other than Roy M. Shane. Although the rules of the bank, or of the statute outlining the procedure to which it should conform in the consideration of applications for mortgage loans, required that where the title to property offered as security was held by two or more joint owners, all such joint owners should sign the application, that requirement cannot be construed as obligating those joint owners to mortgage their own interests in the property—where, as here, the application for the loan clearly showed that Roy M. Shane and he alone was applying for the loan. The signatures of the joint owners did serve a useful purpose. They indicated to the plaintiff bank the names of the persons who claimed interests in the property, which would be helpful to the bank's title examiners when they came to pass on the sufficiency of the security for the loan applied for. What seems perfectly clear to this court, as it did to the trial court, is that the application did not bind all the signers to mortgage their own several interests in the property to secure a loan on behalf of Roy M. Shane; and a careful reading of the entire three pages of the application makes it perfectly clear that it was not susceptible of an interpretation that anybody but Roy M. Shane was asking for a loan or that anybody but Roy M. Shane was being inquired about in the questionnaire included in the application.

In its next point appellant invokes the rule that where an action is founded on fraud it will be in time if begun within two years from the time the fraud was discovered or discoverable if the aggrieved party had used reasonable diligence. But this argument is predicated on the assumption that the defendants other than Roy M. Shane had perpetrated fraud by some sin of commission or omission toward plaintiff. Nothing of the sort existed and the trial court so held.

The same rule is invoked for relief on the ground of mistake. Equity does relieve in a proper case against the consequences of a mutual mistake; but here there was no mutual mistake in which the defendants other than Roy M. Shane participated either actively or passively.

Appellant next contends that it had a right to an equitable lien on the entire property because it furnished the money, $5,500, to pay off the prior Zacharias mortgage. But as the defendants other than Roy M. Shane were only accommodation obligors on the Zacharias note and mortgage, and none of them had received any of the proceeds of the Zacharias loan, any claim of plaintiff as against

them for an equitable lien on the property, or for the bank to be subrogated to the right of Zacharias against them, would have had to be asserted within a reasonable time. Here plaintiff waited over sixteen years, an altogether unreasonable time if its theory of an equitable lien or of subrogation was otherwise tenable, which need not be decided.

With one point urged by appellant we are inclined to agree. The trial court found that the agency of B. C. Morrison, denied under oath, was not established by proof. We think his official position as secretary-treasurer of the local federal farm loan association ex officio conferred on him the function of an agent to conduct the correspondence between that local association and the plaintiff bank, and what he said in his letters bound the local association, and mayhap Roy M. Shane was likewise bound thereby; but certainly the statements in Morrison's letters did not bind the defendants other than Roy M. Shane.

Counsel for the bank also direct attention to Roy M. Shane's apparent ownership as evidenced by his exclusive occupancy of the property for so many years. But there was testimony, dubious though it seems to appellant's counsel, that his long occupancy of the farm was pursuant to an oral agreement between him and his cotenants, and that he lived up to that agreement for a number of years—by paying the taxes, keeping the improvements in repair, and by paying to his cotenants the proceeds of their proportionate rental shares of the arable land down to 1929 at least. That he could not produce a single check or acknowledgment in writing as evidence of such payment was a good talking point to urge before the trial court which alone was authorized to ascertain the truth of that matter. It serves no purpose in this court to inveigh against the credibility of the testimony of witnesses we have never seen.

Continuing to follow the thread of appellant's argument, the next point urged is that L. D. Banta purchased his interest in the land from Mrs. Holland and from Percy, Maurice and Roland Shane with notice of appellant's mortgage. Certainly he did; and as a mere speculator in titles or fractional titles he was not entitled to any favors of law or of equity in this lawsuit. But he was entitled to exact justice, neither more nor less. Out of abundance of caution his counsel answered in his behalf with the characteristic pleas of good faith, want of notice and the like; but if the case is put in its strongest form against him, what would it show? It would show,

as it did show, that Roy M. Shane only owned a five-twelfths interest in the farm at the time he mortgaged it; that there was outstanding in other heirs and devisees a seven-twelfths interest; and not fearing the result of a lawsuit which he had a right to believe would be decided according to law, he bought those interests at what may have been bargain prices; but we know of no rule of trial practice nor of appellate practice which would justify or excuse any judgment denying him what he did buy and pay for.

The industry of appellant's counsel has brought together many sound and equitable rules of law gleaned from the law books, and has submitted many authorities for our perusal and instruction. These have all been carefully considered; but the trouble with appellant's case is its inherent weakness in respect to its pertinent facts.

No material error is made to appear and the judgment is affirmed.